■ CHARLOTTE SOUSIE et al., Respondents, v LANSINGBURGH BOYS AND GIRLS CLUB, INC., Appellant. [759 NYS2d 606] —Carpinello, J. Appeal from an order of the Supreme Court (Marinelli, J.H.O.), entered August 2, 2002 in Rensselaer County, which granted plaintiffs' motion for a directed verdict on the issue of liability.

The details of this negligence action are set forth in a prior decision of this Court and will not be repeated at length herein (291 AD2d 619 [2002]). Briefly, plaintiff Charlotte Sousie (hereinafter plaintiff) fell going down the outside stairway on defendant's property on the night of May 29, 1999. She and her husband, derivatively, commenced this action claiming that defendant failed to provide adequate exterior lighting, thus causing her to fall. On the prior appeal, we concluded that an issue of fact had been raised precluding summary judgment in favor of defendant (*id.*) and, thus, the matter proceeded to a jury trial. After each party rested, Supreme Court granted plaintiffs' motion for a directed verdict on the issue of liability. Defendant now appeals.

Although Supreme Court did not abuse its discretion in precluding the testimony of defendant's expert witness at trial, it did err in directing a verdict in favor of plaintiffs. We begin by noting that the owner of a public building is "required to light the exterior of [its] building at those times when it is open to the public * * * [as] [t]he public is entitled to a safe and reasonable means to enter and exit from an open public

building" (*Gallagher v St. Raymond's R.C. Church,* 21 NY2d 554, 558 [1968]; *see Peralta v Henriquez,* 100 NY2d 139 [ 2003]; *Tarrazi v 2025 Richmond Ave. Assoc.,* 296 AD2d 542, 544 [2002]). However, "[i]n considering [a] motion for judgment as a matter of law, the trial court must afford the party opposing the motion every inference which may properly be drawn from the facts presented, and the facts must be considered in a light most favorable to the nonmovant" (*Szczerbiak v Pilat,* 90 NY2d 553, 556 [1997]; *see Quinlan v Cecchini,* 41 NY2d 686, 687 [1977]). In doing so here, we conclude that the case should have been permitted to go to the jury to evaluate all the evidence and determine if defendant was in fact negligent.

First, because there was some evidence establishing same, it must be accepted as true that defendant had in place three working exterior lights to illuminate the area in which plaintiff fell that night (*compare Shirman v New York City Tr. Auth.,* 264 AD2d 832, 833 [1999]),[1] that each of these lights was on less than one hour before plaintiff's fall and that at least one of these lights must have remained on because it operated on an automatic sensor. It must also be accepted as true that street lights in the vicinity, as well as the moon, provided some additional lighting to the area where plaintiff fell and that the lighting was sufficient to permit plaintiff and her daughter, who was in a parked vehicle outside the facility, to see each other as plaintiff exited the building.

Even though there was proof that it was dark at the bottom of the stairs where plaintiff fell and that at least one of defendant's exterior lights was not on at this time,[2] it was nevertheless up to the jury to evaluate this evidence in conjunction with all other proof. Specifically, the jury learned that a 20-year maintenance employee of defendant routinely turned on all exterior lights to the building at a particular time each day, that defendant's executive director routinely made sure of same when he arrived at work each evening and that defendant always kept its exterior lights on all night to ward off vandalism. There was also evidence that on the night in question, defendant's executive director observed that all exterior lights were on when he arrived at the facility early in the evening and again when he left at 8:30 P.M., which was ap-

---

1. Defendant's executive director testified that there are two globe lights on either side of the facility's front door controlled by a light switch, as well as a large, rectangular light that works on an automatic sensor. According to this witness, the automatic sensor light, which comes on at dusk and remains on all night, is "pretty efficient" and has worked without fail for years.

2. Testimony from various witnesses at trial established that within minutes of plaintiff's fall, a light or lights came on.

proximately 45 minutes before plaintiff's accident. Accepting this witness's testimony as true, as we must, we are compelled to note that no evidence was offered by either party in an attempt to explain what might have occurred in the interim 45-minute period that would have caused any of the exterior lights to go off. Certainly no evidence was offered indicating that these lights were faulty (*compare id.* at 833), that anyone affiliated with defendant intentionally turned off any of the exterior lights that night or that defendant had actual or constructive knowledge that any of its exterior lights had been turned off, either on this or any other night.

In sum, viewing the evidence at trial in a light most favorable to defendant, there was at least a "rational process" by which the jury could have found in its favor (*Szczerbiak v Pilat*, 90 NY2d 553, 556 [1997], *supra*).

Cardona, P.J., Mercure, Peters and Lahtinen, JJ., concur. Ordered that the order is reversed, on the law, and matter remitted for a new trial, with costs to abide the event.